DAVID C. MARCUS (CA Bar No. 158704)
(Email: david.marcus@wilmerhale.com)
WILMER CUTLER PICKERING
          HALE AND DORR LLP
350 South Grand Avenue, Suite 2400
Los Angeles, California 90071
Telephone: (213) 443-5312
Facsimile: (213) 443-5400

*Attorney for Defendant Tesla, Inc.*

*(additional counsel listed below)*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PETER DAWIDZIK,<br><br>          Plaintiff,<br>    v.<br><br>TESLA, INC.,<br><br>          Defendant. | Case No.: 5:25-cv-01982-KK-SP<br><br>**DEFENDANT TESLA, INC.'S REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT**<br><br>Hearing Date:  December 18, 2025<br>Time: 9:30 a.m. PT<br>Judge:  Hon. Kenly Kiya Kato<br>Courtroom:  3 |

ALAN SCHOENFELD (*pro hac vice forthcoming*)
(Email: alan.schoenfeld@wilmerhale.com)
RYAN CHABOT (*pro hac vice forthcoming*)
(Email: ryan.chabot@wilmerhale.com)
WILMER CUTLER PICKERING
       HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone: (212) 937-7294
Facsimile: (212) 230-8888


*Attorneys for Defendant Tesla, Inc.*

**REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**
*Dawidzik v. Tesla, Inc.*, Case No. 5:25-cv-01982-KK-SP

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................1

ARGUMENT ......................................................................................................1

I.    The Court Should Dismiss For Lack Of Standing ...........................................1

    A.    Dawidzik Misstates The Governing Standing Analysis .......................1

    B.    Dawidzik Did Not Suffer An Actionable Injury ..................................4

        1.    Dawidzik did not suffer actionable intrusion on seclusion.........4

        2.    Supposed "loss of control" of information is not actionable ..................................................................................7

        3.    The alleged "unjust enrichment" injury is not actionable ........10

II.   The Court Should Dismiss For Lack Of Personal Jurisdiction ....................12

III.  The Court Should Dismiss For Failure To State A Claim ...........................15

IV.   The Court Should Deny Leave To Amend Further .......................................16

CONCLUSION .................................................................................................17

# TABLE OF AUTHORITIES

## CASES

Page(s)

*Aviles v. Liveramp, Inc.*,
   2025 WL 487196 (Cal. Super. Ct. Jan. 28, 2025) .........................................16

*Bradshaw v. Lowe's Companies, Inc.*,
   2025 WL 3171740 (S.D. Cal. Nov. 12, 2025)......................................................5

*Briskin v. Shopify, Inc.*,
   135 F.4th 739 (9th Cir. 2025) (en banc)..........................................................13

*Camplisson v. Adidas America, Inc.*,
   2025 WL 3228949 (S.D. Cal. Nov. 18, 2025)....................................................10

*City & County of San Francisco v. Trump*,
   897 F.3d 1225 (9th Cir. 2018) .........................................................................11

*Cook, Perkiss & Liehe, Inc. v. Northern California Collection
   Services, Inc.*, 911 F.2d 242 (9th Cir. 1990).....................................................17

*Deivaprakash v. Conde Nast Digital*,
   2025 WL 2541952 (N.D. Cal. Sept. 4, 2025).....................................................10

*Deivaprakash v. Conde Nast Digital*,
   2025 WL 2779193 (N.D. Cal. Sept. 30, 2025)....................................................10

*DellaSala v. Samba TV, Inc.*,
   2025 WL 3034069 (N.D. Cal. Oct. 30, 2025) ..................................................2, 3

*Eichenberger v. ESPN, Inc.*,
   876 F.3d 979 (9th Cir. 2017) ...........................................................................3, 9

*Ford Motor Company v. Montana Eighth Judicial District*,
   592 U.S. 351 (2021)............................................................................................13

*Frasco v. Flo Health, Inc.*,
   349 F.R.D. 557 (N.D. Cal. 2025) ........................................................................3

*Gabrielli v. Haleon US Inc.*,
   2025 WL 2494368 (N.D. Cal. Aug. 29, 2025)..................................5, 10, 12

*Gabrielli v. Motorola Mobility LLC*,
   2025 WL 1939957 (N.D. Cal. July 14, 2025) ..............................................3, 15

*Greenley v. Kochava, Inc.*,
   684 F. Supp. 3d 1024 (S.D. Cal. 2023) ........................................................11, 12

*Heiting v. Marriott Int'l, Inc.*,
   743 F. Supp. 3d 1163 (C.D. Cal. 2024).............................................................14

**REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**
*Dawidzik v. Tesla, Inc.*, Case No. 5:25-cv-01982-KK-SP

*Hughes v. Ben & Jerry's Homemade, Inc.*,
  2025 WL 2306840 (Cal. Super. Ct. Aug. 1, 2025)................................15

*In re Facebook, Inc. Internet Tracking Litig.*,
  956 F.3d 589 (9th Cir. 2020) ..........................................................3, 6, 11

*Katz-Lacabe v. Oracle Am., Inc.*,
  668 F. Supp. 3d 928 (N.D. Cal. 2023)....................................................3

*Khamooshi v. Politico LLC*,
  2025 WL 2822879 (N.D. Cal. Oct. 2, 2025) ...........................................7

*Massie v. Gen. Motors Co.*,
  2021 WL 2142728 (E.D. Cal. May 26, 2021) .........................................14

*Mitchener v. Talkspace Network LLC*,
  2025 WL 1822801 (C.D. Cal. June 27, 2025) ...........................................2

*Moody v. Textron Inc.*,
  2025 WL 2025597 (C.D. Cal. July 2, 2025) ...........................................15

*Moody v. Textron Inc.*,
  2025 WL 2828109 (C.D. Cal. Sept. 24, 2025) .......................................15

*Popa v. Microsoft Corp.*,
  153 F.4th 784 (9th Cir. 2025)..............................2, 3, 4, 5, 6, 7, 9, 10

*Riganian v. LiveRamp Holdings, Inc.*,
  791 F. Supp. 3d 1075 (N.D. Cal. 2025)...........................................3, 5, 6

*Rodriguez v. Autotrader.com, Inc.*,
  762 F. Supp. 3d 921 (C.D. Cal. 2025).....................................................12

*Rodriguez v. Culligan Int'l Co.*,
  2025 WL 3064113 (S.D. Cal. Nov. 3, 2025)............................................5

*Rounds v. Case-Mate Inc.*,
  2025 WL 1873999 (C.D. Cal. July 2, 2025) ...........................................15

*Shah v. Hilton Worldwide Holdings Inc.*,
  2025 WL 1683577 (N.D. Cal. June 11, 2025)........................................15

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021)..................................................................1, 2, 11

*U.S. Department of Justice v. Reporters Committee for Freedom of
  Press*, 489 U.S. 749 (1989) ............................................................8, 9

*Wooten v. BioLife Plasma Servs. L.P.*,
  2025 WL 2979619 (E.D. Cal. Oct. 22, 2025)......................................3, 6, 7

**STATUTES, RULES, AND REGULATIONS**

5 U.S.C. § 552(b)(7)(C) ......................................................................8, 9

iii

Cal. Penal Code § 637.2 ....................................................................10, 11

Cal. Penal Code § 638.51 ......................................1, 5, 10, 11, 12, 14

## OTHER AUTHORITIES

Restatement (Second) of Torts § 652B cmts. c, d ...................................6

Restatement (Second) of Torts § 652D cmt. a.......................................8

**REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**
*Dawidzik v. Tesla, Inc.*, Case No. 5:25-cv-01982-KK-SP

**INTRODUCTION**

Dawidzik's opposition is unpersuasive.  On standing, Dawidzik largely misunderstands the governing case law, which requires dismissal.  He did not suffer actionable intrusion on seclusion, and neither a "loss-of-control injury" nor alleged unjust enrichment is actionable for his cause of action in this context.  On personal jurisdiction, the connection between Tesla and California that Dawidzik emphasizes—that Tesla sells cars into the State—has nothing to do with his claim, so cannot support specific personal jurisdiction.  And finally, on Dawidzik's failure to state a claim, his opposition barely responds to the argument that Tesla does make—that he does not allege that a pixel tracker operates analogously to a trap-and-trace device or pen register—but regurgitates opposition to arguments against § 638.51 claims that Tesla did not make.  For any and all these reasons, the complaint should be dismissed, and without leave to amend.

**ARGUMENT**

**I.    The Court Should Dismiss For Lack Of Standing**

**A.    Dawidzik Misstates The Governing Standing Analysis**

Dawidzik makes several mistakes about the state of the governing standing case law.  He begins with the argument that "[l]ongstanding caselaw establishes that a statutory privacy violation gives rise to Article III standing under CIPA."  Opp. 3.  For this, he cites CIPA *statutory* standing cases.  *See* Opp. 3-4.  But statutory standing is not at issue—Article III constitutional standing is.  What "CIPA protects" (Opp. 4)—and on whom the California legislature conferred statutory standing for it—do not answer who has constitutional standing under Article III.  "*That* inquiry asks whether plaintiffs have identified a close historical or common-law analogue for their asserted injury."  *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021) (emphasis added).  Conflating the two "reverts to a pre-*TransUnion* (even pre-*Spokeo*) approach," whereas "*TransUnion* clearly cautions

1

courts not to 'treat an injury as "concrete" for Article III purposes based only on [the legislature's] say-so.'" *Popa v. Microsoft Corp.*, 153 F.4th 784, 792 (9th Cir. 2025) (quoting *TransUnion*, 594 U.S. at 426).

For his primary standing authority, Dawidzik relies on *Mitchener v. Talkspace Network LLC*, 2025 WL 1822801 (C.D. Cal. June 27, 2025). *See* Opp. 4 ("The Central District of California followed this reasoning in *Mitchener* …. The *Mitchener* court held that allegations of tracking … were sufficient to allege a privacy injury. …. Here, the FAC alleges [tracking] similar to the tracking at issue in *Mitchner* [sic] …."). But Dawidzik gets *Mitchener*'s holding exactly wrong. It did not hold that allegations of tracking like his "were sufficient to allege a privacy injury." Opp. 4. It held that they were not: that allegations like Dawidzik's do "not sufficiently allege[] the collection or disclosure of any … personal information that would violate a protectable privacy interest." *Mitchener*, 2025 WL 1822801, at *8. *Mitchener* granted the defendant's motion to dismiss and dismissed the complaint for lack of standing. *See id.* at *8, 13. Dawidzik urges the Court to find *Mitchener* analogous and follow its reasoning. *See* Opp. 4. Tesla agrees. The Court should do so and dismiss his complaint too for lack of standing.[1]

Tesla itself chose not to rely on *Mitchener* because it predates *Popa*. Unsurprisingly—because it is fatal to his claim—Dawidzik takes pains to argue that *Popa* has not changed the standing analysis. *See* Opp. 3, 6, 8. For this point, he relies on *DellaSala v. Samba TV, Inc.*, 2025 WL 3034069, at *2 (N.D. Cal. Oct.

---

[1] In *Mitchener*, Judge Konstandt dismissed with leave to amend, which the plaintiff did. *See* 2:24-cv-07067-JAK-BFM (C.D. Cal.), Dkt. No. 59. Talkspace again moved to dismiss. *See id.* Dkt. No. 61. Judge Konstandt held a hearing at which he expressed his "tentative view that it is inclined to … GRANT the MTD." *Id.* Dkt. No. 71. The plaintiff then voluntarily dismissed the lawsuit. *See id.* Dkt. No. 72.

**REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**
*Dawidzik v. Tesla, Inc.*, Case No. 5:25-cv-01982-KK-SP

30, 2025), which stated that *Popa* "did not set forth a new rule of law." *See* Opp. 3.  Dawidzik uses this statement to defend his reliance on pre-*Popa* decisions.  *See, e.g.*, Opp. 3, 8 (citing *DellaSala*, 2025 WL 3034069, at *2; *Eichenberger v. ESPN, Inc.*, 876 F.3d 979 (9th Cir. 2017); *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020); *Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075 (N.D. Cal. 2025); *Gabrielli v. Motorola Mobility LLC*, 2025 WL 1939957 (N.D. Cal. July 14, 2025); *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928 (N.D. Cal. 2023); *Frasco v. Flo Health, Inc.*, 349 F.R.D. 557 (N.D. Cal. 2025)).  But *DellaSala* made this statement only in declining to consider a new standing argument based on *Popa* that was first raised in the defendant's reply brief.  *See DellaSala*, 2025 WL 3034069, at *2.

*DellaSala* went on, however, to *dismiss* the plaintiff's intrusion-upon-seclusion claim under Rule 12(b)(6) based on *Popa*'s reasoning.  *See* 2025 WL 3034069, at *5.  DellaSala alleged, similar to Dawidzik, that the defendant "intercept[s] IP addresses and 'other information' directly from consumer's Smart TVs" and uses it to identify specific users.  *Id.* at *4.  But the court explained that "'[d]isclosure of one's [] IP address, without more, does not bear similarity to the 'highly offensive' interferences or disclosures that were actionable at common law.'"  *Id.* at *5 (quoting *Wooten v. BioLife Plasma Servs. L.P.*, 2025 WL 2979619, at *3 (E.D. Cal. Oct. 22, 2025)) (alterations in original).  Rather, in *Popa*, "[t]he Ninth Circuit concluded the defendants' 'conduct in this case does not implicate a similarly sensitive sphere' and thus the plaintiff did not plausibly allege infringement of her privacy interest."  *Id.* (quoting *Popa*, 153 F.4th at 791).  The court held:  "So too here.  Plaintiffs have not plausibly alleged a highly offensive violation of a privacy interest.  Accordingly, Plaintiffs' common law intrusion upon seclusion claim is dismissed."  *Id.*  *DellaSala* therefore strongly supports the conclusion that Dawidzik fails to allege an actionable privacy interest under *Popa*.

**REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**
*Dawidzik v. Tesla, Inc.*, Case No. 5:25-cv-01982-KK-SP

Thus, both of Dawidzik's central authorities—*Mitchener* and *DellaSala*—support granting Tesla's motion.

Finally, the interplay between *Popa* and the prior Ninth Circuit decisions that Dawidzik relies on—*In re Facebook* and *Eisenberger*—is straightforward. Indeed *Popa* addressed it directly. It explained that those are "two pre-*TransUnion* cases" whose "analysis finds no support in *TransUnion*." *Popa*, 153 F.4th at 793-794. The only permissible analysis, *Popa* holds, is the Supreme Court's in *TransUnion*, where "the Court identified discrete privacy torts (not a general right to privacy) and evaluated plaintiffs' claims based on their similarity to the harm protected by [them]." *Id.* at 794. *Popa* did "not revisit *Eichenberger* and *In re Facebook*" because, "[d]espite the broad statements made therein, those decisions still accounted for the individual circumstances giving rise to the plaintiffs' alleged injuries rather than simply greenlighting a per se rule for privacy statutes." *Id.* In other words, *In re Facebook* and *Eichenberger* are still good law only to the extent they are consistent with *TransUnion*, and not otherwise—an entirely unsurprising conclusion.

### B. Dawidzik Did Not Suffer An Actionable Injury

Eventually, Dawidzik acknowledges—as he must—that standing turns on the "requirement of identifying a close historical common-law analogue" under *Popa*. Opp. 6. But he fails to show that he can meet that requirement. He appears to offer three possibilities: intrusion on seclusion, "loss of control of data," and unjust enrichment. None works.

#### 1. Dawidzik did not suffer actionable intrusion on seclusion

Dawidzik argues that he "alleges a modern digital analogue of intrusion upon seclusion." Opp. 6. Under *Popa*, intrusion upon seclusion is one of the four actionable privacy torts recognized at common law. *See Popa*, 153 F.4th at 792. But as Tesla explained (Mem. 6-9), Dawidzik's allegations do not meet its

**REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**
*Dawidzik v. Tesla, Inc.*, Case No. 5:25-cv-01982-KK-SP

requirements—specifically, that the alleged intrusion on his IP address and noncontent metadata, which is inarguably not embarrassing, invasive, or private, was "of a kind that would be highly offensive to a reasonable man." *Id.* at 791 (cleaned up). Several post-*Popa* decisions have reached just this conclusion—as Dawidzik's authority *DellaSala*. *See* Mem. 7-9 (collecting cases); *see also Bradshaw v. Lowe's Companies, Inc.*, 2025 WL 3171740, at *4-6 (S.D. Cal. Nov. 12, 2025) (dismissing pixel tracking case asserting § 638.51 claim against website operator, with an identical theory as Dawidzik's, for lack of standing); *Rodriguez v. Culligan Int'l Co.*, 2025 WL 3064113, at *3-5 (S.D. Cal. Nov. 3, 2025) (same).

Dawidzik's efforts to avoid this conclusion are unsuccessful. He contends that "[h]arm can be based on either the disclosure of 'specific, sensitive information' or that the third party 'acquired an enormous amount of individualized data,'" and that his "allegations fall into the latter category." Opp. 5 (quoting *Riganian*, 791 F. Supp. 3d at 1087). Implicitly, he concedes that his allegations do *not* fall in the former category. And they do not. But only the former is actionable as common-law intrusion on seclusion, which, as *Popa* explained, requires intrusion on "embarrassing, invasive, or otherwise private information." *See Popa*, 153 F.4th at 791. Although Dawidzik elsewhere baldly asserts that he alleges "precisely the type of information *Popa* emphasized may qualify as a concrete injury," Opp. 8, *Popa* referenced only "sensitive medical or financial information," *Popa*, 153 F.4th at 791, which Dawidzik plainly does not allege. *See* AC ¶ 9. The cases that he cites all concern healthcare information. *See* Opp. 8 & n.1 (*Frasco v. Flo Health Inc.*, *Katz-Lacabe v. Oracle Am., Inc.*, *Gabrielli v. Haleon*).[2] And while he states that "the tracker-based injury principle applies across all industries," *id.* n.1, *Popa* makes clear that the sensitivity of the

---

[2] Dawidzik's footnote 1 makes clear he is referencing *Gabrielli v. Haleon* here, not the *Gabrielli v. Motorola Mobility LLC* decision he mistakenly cites above the line.

**REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**
*Dawidzik v. Tesla, Inc.*, Case No. 5:25-cv-01982-KK-SP

information is critical.  *See Popa*, 153 F.4th at 791; *see also Wooten*, 2025 WL 2979619, at *3 ("the invasive nature of the information collected [is] crucial").

*Popa* therefore also forecloses relying on merely collecting nonsensitive information, even in large amounts.  Dawidzik's only authority for this argument is *Riganian*, but it is insufficient.  First, *Riganian* predates *Popa*, so it is not applying the analysis operative today.  Second, *Riganian* does not hold that voluminous but nonsensitive information is actionable:  it acknowledged that, even under pre-*Popa* caselaw, "the relevant question is 'whether the data itself is sensitive.'"  791 F. Supp. 3d at 1087 (quoting *In re Facebook Tracking*, 956 F.3d at 603).  There, the defendant LiveRamp (a data broker) sold profiles of users segmented by, for example, "people with cancer," "poor people," "unemployed individuals … seen at clinics/hospitals," or "users of the LGBT dating app Grindr."  *Id.  Riganian* held that this information was sufficiently sensitive, not that sensitive information was not required to show common-law intrusion on seclusion.

Even if large amounts of nonsensitive information were actionable as common-law intrusion on seclusion—and it is not—Dawidzik's claim would fail, of course.  What he alleges was collected is not "an enormous amount of individualized data," Opp. 5.  It is a discrete and benign set of metadata about his browser, plus his IP address.  This would fall far short even under this standard.

Dawidzik's effort to draw a line between anonymized and non-anonymized data collection is equally unpersuasive.  *See* Opp. 7-9.  Fundamentally, the common law drew no such line.  The Restatement of Torts offers many examples of non-anonymous supposed "intrusions" that are not actionable.  *See* Restatement (Second) of Torts § 652B cmts. c, d (Am. Law Inst. 1977) (no liability "for the examination of a public record concerning the plaintiff," "for observing him or even taking his photograph while he is walking on the public highway," "for knocking at the plaintiff's door," for "calling him to the telephone on one occasion

**REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**
*Dawidzik v. Tesla, Inc.*, Case No. 5:25-cv-01982-KK-SP

or even two or three, to demand payment of a debt"—all of which are non-anonymous supposed intrusions). Neither did *Popa* draw this line. Indeed as to *Popa*, Dawidzik is once again exactly wrong when he states that "[s]ignificantly, unlike the instant case, plaintiff in *Popa* did not allege that their information was de-anonymized, linked to comprehensive, individualized profiles." Opp. 7. That is exactly what Popa alleged. *See Popa v. Microsoft*, No. 24-14 (9th Cir.), Dkt. No. 16.1 at ER-029 (First Amended Complaint) ¶¶ 36-41 ("Session Replay Code does not necessarily anonymize user sessions …. some Session Replay Providers explicitly offer website owners cookie functionality that permits linking a session to an identified user …. Session Replay Providers often create 'fingerprints' that are unique to a particular user[]"). Contrary to Dawidzik (Opp. 9 n.2), it is also what was alleged in *Khamooshi v. Politico LLC*, 2025 WL 2822879 (N.D. Cal. Oct. 2, 2025), and *Wooten v. BioLife Plasma Servs. L.P.*, 2025 WL 2979619 (E.D. Cal. Oct. 22, 2025): the use of supposedly identifying information for so-called digital "fingerprinting." At bottom, if there is no "embarrassing, invasive, or otherwise private information collected by" the alleged pixel trackers, *Popa*, 153 F.4th at 791, it is irrelevant whether that information is anonymized or not—its collection is not actionable to confer standing.

> **2.     Supposed "loss of control" of information is not actionable**

Mixed with Dawidzik's failed attempt to show intrusion on seclusion is an assertion of a "loss-of-control injury" that categorically is not actionable. Opp. 9.

This is clear from *Popa*. *Popa* interprets *TransUnion* to require a historical analogue to at least one of "four discrete torts that protected specific kinds of privacy-related harms": intrusion upon seclusion, appropriation of another person's name or likeness, publicity given to another person's private life, and publicity that places one in a false light. 153 F.4th at 792. None of them protects amorphous "control over one's information." Opp. 8. Intrusion on seclusion is addressed

**REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**
*Dawidzik v. Tesla, Inc.*, Case No. 5:25-cv-01982-KK-SP

above.  Appropriation protected only names and likenesses.  *See* Mem. 6.  And the two publicity torts require *publicity*—which "means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge," and which is distinct from "publication," "which includes any communication by the defendant to a third person."  Restatement (Second) of Torts § 652D cmt. a (Am. Law Inst. 1977).  "Thus it is not an invasion of the right of privacy, within the rule stated in this Section, to communicate a fact concerning the plaintiff's private life to a single person or even to a small group of persons."  *Id.*  Dawidzik does not allege that Telsa publicized anything.  At most, he alleges that its pixel tracker shared information with three third parties (Google, X/Twitter, and StackAdapt), which is not actionable.  To the extent that he alleges an injury based on what these third parties supposedly do, that is not traceable to Tesla to confer standing here.

Following *TransUnion*, and following *Popa* in this Circuit, then, an alleged "loss-of-control injury" is not enough to confer standing.  Cases accepting this injury seem to trace it back to the Supreme Court's statement in *U.S. Department of Justice v. Reporters Committee for Freedom of Press*, 489 U.S. 749, 763 (1989), that "both the common law and the literal understandings of privacy encompass the individual's control of information concerning his or her person."  That case asked whether FBI rap sheets fell under the FOIA exception for law enforcement records that "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C).  The Supreme Court expressly distinguished this question from the one presented here:  "The question of the statutory meaning of privacy under the FOIA is, of course, not the same as the question whether a tort action might lie for invasion of privacy or the question whether an individual's interest in privacy is protected by the Constitution."  *Reps. Comm.*, 489 U.S. at 763 n.13.  Even so, the Court acknowledged that "the extent of

8

the protection accorded a privacy right at common law rested in part on the degree of dissemination of the allegedly private fact," citing the Restatement among other things. *Id.* at 763 & n.15. And its statements correlating privacy with control over information concern the "literal understandings of privacy," from dictionary definitions, not the contours of actionable common-law harms. *See, e.g.*, *id.* at 763-764 & n.16. In the end, the Court merely held that FBI rap sheets, though compilations of public information, were subject to § 552(b)(7)(C). In no way did it interpret the four recognized common-law privacy torts to encompass an amorphous "loss-of-control injury" with no alleged publicity.

This statement, however, became erroneously relied on in standing analysis. In *Eichenberger v. ESPN, Inc.*, 876 F.3d 979 (9th Cir. 2017), the Court cited it in interpreting the Video Privacy Protection Act (VPPA). Distinguishing *Spokeo*, *Eichenberger* held that a provision of the VPPA was "substantive" not merely procedural because it "protects privacy interests more generally by ensuring that consumers retain control over their personal information." *Id.* at 983. Citing *Reporters Committee* for the proposition that "the Supreme Court has noted that 'both the common law and the literal understanding of privacy encompass the individual's control of information concerning his or her person,'" *Eichenberger* held that "the VPPA identifies a *substantive* right to privacy that suffers *any time* a video service provider discloses otherwise private information" under *Spokeo*. *Id.* at 983-984 (quoting *Reps. Comm.*, 489 U.S. at 763). "Several years later, *In re Facebook* relied on *Eichenberger*'s interpretation of *Spokeo*." *Popa*, 153 F.4th at 794. As *Popa* explained, however, these "broad statements" and this "analysis find[] no support in *TransUnion*": "There, the Supreme Court made no distinction between 'procedural' and 'substantive' statutory provisions, instead holding, without any limitation, that courts should assess whether 'plaintiffs have identified

**REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**
*Dawidzik v. Tesla, Inc.*, Case No. 5:25-cv-01982-KK-SP

a close historical or common-law analogue for their asserted injury,'" namely "discrete privacy torts (not a general right to privacy)." *Id.*

Cases finding standing from mere "loss of control," disconnected from discrete historical common-law privacy torts, are therefore wrongly decided. As noted, many cases that Dawidzik cites for this proposition predate *Popa. See, e.g.*, Opp. 5. The few decisions that have relied on this injury after *Popa* are inconsistent with it, so this Court should not follow them. *See* Opp. 9 (citing *Camplisson v. Adidas Am., Inc.*, 2025 WL 3228949, at *6 (S.D. Cal. Nov. 18, 2025); *Gabrielli v. Haleon US Inc.*, 2025 WL 2494368, at *8 (N.D. Cal. Aug. 29, 2025)).[3] Bare "loss of control of information" would not have been actionable at the common law, so it does not confer standing today.

### 3. The alleged "unjust enrichment" injury is not actionable

Finally, Dawidzik cannot assert standing based on an "unjust enrichment" injury, for several reasons. The first one is the most obvious. Although his prayer for relief purports to seek "[d]isgorgement of profits resulting from unjust enrichment," Dawidzik asserts only a single cause of action, under California Penal Code § 638.51. He abandoned his UCL claim and never asserted unjust enrichment. California Penal Code § 637.2 provides the private right of action for his § 638.51 claim, *see* AC ¶ 208, and that section does not provide for disgorgement, restitution, or any other relief for supposed "unjust enrichment." It provides only for (a) "the greater of the following amounts: (1) Five thousand dollars ($5,000) per violation" or "(2) Three times the amount of actual damages, if

---

[3] As Tesla already explained (Mem. 8 n.3), *Deivaprakash v. Conde Nast Digital* was decided on the basis of statutory standing, not Article III standing, addressing Article III standing in dictum or in denying reconsideration, and, in any event, is wrongly decided on this point. *See Deivaprakash v. Conde Nast Digital*, 2025 WL 2541952, at *4 n.4 (N.D. Cal. Sept. 4, 2025); *Deivaprakash v. Conde Nast Digital*, 2025 WL 2779193, at *1-2 (N.D. Cal. Sept. 30, 2025).

**REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**
*Dawidzik v. Tesla, Inc.*, Case No. 5:25-cv-01982-KK-SP

any, sustained by the plaintiff"; or (b) "to enjoin and restrain any violation of this chapter."  Cal. Penal Code § 637.2(a), (b); *see also City & Cnty. of San Francisco v. Trump*, 897 F.3d 1225, 1239 (9th Cir. 2018) ("Under the doctrine of 'inclusio unius est exclusio alterius' (the inclusion of one is the exclusion of the other), 'when a statute limits a thing to be done in a particular mode, it includes a negative of any other mode.'").  "[S]tanding is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)."  *TransUnion*, 594 U.S. at 431.  So even if Dawidzik had this injury, it would not give him standing to assert his claim.

Unsurprisingly, Dawidzik cites no authority finding standing to assert a § 638.51 claim—or any CIPA claim, or any statutory privacy claim—against a mere website provider under such a theory of injury.  His primary authority is the pre-*Popa* case *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1050 (S.D. Cal. 2023), the first decision to permit a § 638.51 claim in the pixel context to proceed past a motion to dismiss, and it highlights the problem.  *Greenley* was a case against a data broker, not a mere website provider like Tesla.  Where Dawidzik argues that his "allegations are like *Greenley*, where the defendant collected the data, 'packaged' it, 'and sold it to clients for advertising purposes,'" Opp. 10 (quoting *Greenley*, 684 F. Supp. 3d at 1035), he is conflating his allegations about what *Tesla* does and what Google, X/Twitter, and StackAdapt allegedly do.  And in any event, *Greenley*'s standing holding on this front relies on analysis from *In re Facebook* about "disgorgement of unjustly earned profits" that related to California statutory and common law claims that Dawidzik does not bring (namely, CDAFA, trespass to chattels, fraud, statutory larceny).  *See In re Facebook Tracking*, 956 F.3d at 599.  Under this case law, Dawidzik has the wrong defendant and the wrong claims for this injury.

**REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**
*Dawidzik v. Tesla, Inc.*, Case No. 5:25-cv-01982-KK-SP

His two other authorities are equally unhelpful to him.  In *Rodriguez v. Autotrader.com, Inc.*, 762 F. Supp. 3d 921, 927 (C.D. Cal. 2025), the court considered standing only for the plaintiff's § 631 claim, not its § 638.51 claim, and it held that she *lacked* standing because she failed to allege information "sufficiently personal or sensitive that its disclosure is harmful"—just like Dawidzik.  Meanwhile *Gabrielli v. Haleon US Inc.*, 2025 WL 2494368, at *4-6 (N.D. Cal. Aug. 29, 2025), found standing based on a privacy injury, not on this unjust-enrichment theory at all (and it is distinguishable because it concerns private health information, as noted above).  Dawidzik's quotation from this case is from its 12(b)(6) section allowing the plaintiff "to proceed through the pleadings stage *with a claim for unjust enrichment*"—a claim Dawidzik does not assert.  *Id.* at *15 (emphasis added); *see* Opp. 10-11.[4]

Altogether, with no basis in the statute or case law for it, Dawidzik asks this Court to be the first ever to recognize "unjust enrichment" as a plausible basis for standing to bring a California Penal Code § 638.51 claim that does not provide for such relief.  The Court should decline this invitation.

## II.    The Court Should Dismiss For Lack Of Personal Jurisdiction

Dawidzik raises scattershot arguments for asserting personal jurisdiction over Tesla (Opp. IV.B.1-7), but they suffer from three fatal deficiencies.

*First*, alleging that Tesla was aware generally that Californians would visit its website is not enough.  There is no dispute what Dawidzik must show:  Tesla "must purposefully direct [its] activities" at the forum, his "claim must be one which arises out of or relates to the defendant's forum-related activities," and

---

[4] He could not if he tried to, because—as *Gabrielli* does not address but *Greenley* decides correctly—unjust enrichment "is not a stand-alone cause of action." *Greenley*, 684 F. Supp. 3d at 1055.

**REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**
*Dawidzik v. Tesla, Inc.*, Case No. 5:25-cv-01982-KK-SP

exercising jurisdiction "must be reasonable."[5]  *Briskin v. Shopify, Inc.*, 135 F.4th 739, 750-751 (9th Cir. 2025) (en banc).  To show "purposeful direction," Tesla must "(1) commit an intentional act, that is (2) expressly aimed at the forum state, and (3) which causes harm that the defendant knows will be suffered in the forum state."  *Id.* at 751.[6]  That Dawidzik allegedly felt the effects in California (Opp. IV.B.2, IV.B.4) is necessary but not sufficient.  As Tesla noted (Mem. 13), *Briskin* disavowed "look[ing] only to where [the plaintiff] was located at the time" to establish specific personal jurisdiction.  135 F.4th at 756 n.12.  And Dawidzik conflates the second and third requirements when he states that "Tesla expressly aimed its tracking conduct at California users" but points only to Tesla's alleged "knowing it would execute on the devices of California consumers" and "awareness that California residents use the site."  Opp. 11 (citing AC ¶¶ 16-19, 21-23).  Merely offering a passive or interactive website foreseeably accessible to Californians does not show express aiming at the forum under *Briskin*, which affirmed that "something more" is required.  *See* Mem. 12; *Briskin*, 135 F.4th at 758 n.16.

Dawdzik's only effort at "something more" is irrelevant:  that Tesla uses its website to sell "vehicles to California residents."  Opp. 11.  That Tesla sells vehicles in California and many other states nationwide might subject it to specific personal jurisdiction for claims related to those vehicles, including under *Ford Motor Company v. Montana Eighth Judicial District*, 592 U.S. 351 (2021).  *See* Opp. 13-15.  Maybe someone who ordered a Tesla vehicle on the website for

---

[5] Tesla did not move to dismiss on the reasonableness requirement, so Dawidzik's arguments about it (Opp. IV.B.7) can be disregarded.

[6] This is "the '*Calder* effects' test."  *Briskin*, 135 F.4th at 756.  Dawidzik's argument is unclear, but to the extent that he is arguing in Parts IV.B.2 and IV.B.4 that he can establish specific personal jurisdiction under *Calder* through some lesser showing, he is mistaken.

**REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**
*Dawidzik v. Tesla, Inc.*, Case No. 5:25-cv-01982-KK-SP

delivery to California could bring this § 638.51 claim here. But Dawidzik did not. His claim is about merely visiting the Tesla website, for any—or no—purpose. *See, e.g.*, AC ¶ 15. That Tesla sells other people cars, allegedly including using its website, is irrelevant to Dawidzik's claims and so to specific personal jurisdiction. *See, e.g.*, *Heiting v. Marriott Int'l, Inc.*, 743 F. Supp. 3d 1163, 1171 (C.D. Cal. 2024) (finding no specific jurisdiction over website privacy claims because the relevant contacts were not "Marriott's broader business contacts with California" but "the contacts from which the alleged harm arose: namely, Marriott's role in operating the website as related to the covert collection, processing, and distribution of [the plaintiff's] data"); *Massie v. Gen. Motors Co.*, 2021 WL 2142728, at *6 (E.D. Cal. May 26, 2021) (similar).

While Dawidzik argues that this "case is analogous to *Briskin*," Opp. 15, he cannot refute that the key fact from *Briskin* is missing: an allegation that Tesla knew Dawidzik was in California at the time the alleged pixel tracking was initiated. *See* Mem. 13-15. On this point, Dawidzik misunderstands the importance of who "uses" the information from the pixel tracker. *See* Opp. IV.B.3. Even accepting Dawidzik's allegation that Tesla "uses the data collected by the Trackers," Opp. 15 (quoting AC ¶ 9), Tesla has no alleged or arguable knowledge of Dawidzik's location in California *before* the complained-of conduct—installing the pixel tracker that allegedly collects this data.[7] As Dawidzik puts it in opposition, he claims this happens "the moment Plaintiff loads Tesla's website." Opp. 12. As alleged, Tesla does not know where Dawidzik is when that occurs. As another judge in this District put it, how could a defendant "have expressly

---

[7] Confusingly, Dawidzik writes that his allegations about Tesla's eventual use of the data "distinguish this case sharply from *Briskin*, where Shopify did not deploy or use the data-collection tools and had no knowledge of where users were located" (Opp. 12)—which gets both the facts and holding of *Briskin* exactly backward.

**REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**
*Dawidzik v. Tesla, Inc.*, Case No. 5:25-cv-01982-KK-SP

aimed its conduct at the forum state through its embedded software if one of the purposes is to identify where a visitor is located"?  *Moody v. Textron Inc.*, 2025 WL 2025597, at *4 (C.D. Cal. July 2, 2025) [*Moody I*].  That distinguishes *Briskin*, as many cases have held, *see* Mem. 14-15 (citing, inter alia, *Shah v. Hilton Worldwide Holdings Inc.*, 2025 WL 1683577, at *2 (N.D. Cal. June 11, 2025); *Moody v. Textron Inc.,* 2025 WL 2828109, at *5 (C.D. Cal. Sept. 24, 2025) [*Moody II*]; *Rounds v. Case-Mate Inc.*, 2025 WL 1873999, at *6 (C.D. Cal. July 2, 2025); *Moody I*, 2025 WL 2025597, at *4; *Hughes v. Ben & Jerry's Homemade, Inc.*, 2025 WL 2306840, at *4 (Cal. Super. Ct. Aug. 1, 2025))—cases that Dawidzik never addresses.

The one case that Dawidzik does cite (at Opp. 14), *Gabrielli v. Motorola Mobility LLC*, 2025 WL 1939957 (N.D. Cal. July 14, 2025), is distinguishable for the reasons that Tesla already explained.  *See* Mem. 15 & n.5 (addressing *Gabrielli*).  At bottom, that case was about misrepresentations in Motorola's privacy policy including its California privacy disclosure, which Dawidzik's is not. That case concluded that the plaintiff sufficiently alleged that Motorola knew the plaintiff was in California at the time it installed a pixel tracker, while Dawidzik's allegations permit only the opposite conclusion.  And on the California privacy disclosure, *Gabrielli* is inconsistent with *Briskin* and wrongly decided:  including that notice shows only a foreseeable effect, not purposeful direction.  Though Dawidzik cites this decision, he responds to none of Tesla's arguments about it.

## III.    The Court Should Dismiss For Failure To State A Claim

When plaintiffs' lawyers first started bringing pen-register claims about pixel trackers, defendants rightly challenged this bizarre fit on several grounds. Tesla did not advance all those arguments at this stage.  Dawidzik nonetheless spends extensive time rebutting these arguments Tesla did not make, arguing that CIPA does not apply only to telephone technology, that web browsing does

**REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**
*Dawidzik v. Tesla, Inc.*, Case No. 5:25-cv-01982-KK-SP

involve "dialing, routing, addressing, and signaling" information, that Dawidzik did not consent to pixel tracking, that he has alleged non-content information, and more. *See* Opp. 17-22. He cites several cases that considered some of these arguments. *See, e.g.*, Opp. 21. Tesla reserves the right to raise these contentions at a later stage if this case proceeds, but it did not make any of these arguments in its motion to dismiss.

Instead, Tesla made a single targeted argument for dismissal: that pixel trackers simply do not operate as pen registers or trap-and-trace devices do (even if you analogize IP addresses to telephone numbers), so Dawidzik's allegations fail to state a claim. *See* Mem. 16-19. To that, Dawidzik does not directly respond.

His short response (at Opp. 22) to the California decision reaching a similar conclusion, *Aviles v. Liveramp, Inc.*, 2025 WL 487196 (Cal. Super. Ct. Jan. 28, 2025), is off base. He is incorrect that the decision focuses on whether IP addresses are routing, addressing, or signaling information. Opp. 22. Except for quoting the statutory definitions, the decision does not discuss that element at all. He is correct that "the defendant did 'not argue that software cannot be a pen register or trap and trace device.'" Opp. 22. But neither did Tesla. And ironically, what Dawidzik quotes is the *Aviles* decision's observation that its plaintiff, like Dawidzik, spent a lot of space on arguments the defendant did not make: "Plaintiff argues at length in his opposition that software is not excluded from being a pen register or trap and trace device by nature of its not being a form of telephonic surveillance. But Defendant does not argue that software cannot be a pen register or trap and trace device." *Aviles*, 2025 WL 487196, at *3. The Court should accept the unrebutted argument that Tesla did make and dismiss the complaint.

## IV.    The Court Should Deny Leave To Amend Further

Dawidzik should be denied leave to further amend the complaint. He has already amended to—in his words—"bolster[] the allegations" and "provide[]

**REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**
*Dawidzik v. Tesla, Inc.*, Case No. 5:25-cv-01982-KK-SP

detailed technical allegations," in full view of Tesla's arguments.  Opp. 3.  Yet he still fails to allege standing, personal jurisdiction, or a plausible claim for relief. This proves that his "pleading could not possibly be cured by the allegation of other facts."  *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).  Dismissal should be without leave to amend.

## CONCLUSION

The Court should dismiss Dawidzik's amended complaint.

Respectfully submitted,

Dated: December 4, 2025

/s/ *David C. Marcus*
DAVID C. MARCUS
(CA Bar No. 158704)
(Email: david.marcus@wilmerhale.com)
WILMER CUTLER PICKERING
     HALE AND DORR LLP
350 South Grand Avenue, Suite 2400
Los Angeles, California 90071
Telephone: (213) 443-5312
Facsimile: (213) 443-5400

ALAN SCHOENFELD
(*pro hac vice forthcoming*)
(Email: alan.schoenfeld@wilmerhale.com)
RYAN CHABOT
(*pro hac vice forthcoming*)
(Email: ryan.chabot@wilmerhale.com)
WILMER CUTLER PICKERING
     HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone: (212) 937-7294
Facsimile: (212) 230-8888

*Attorney for Defendant Tesla, Inc.*

**REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**
*Dawidzik v. Tesla, Inc.*, Case No. 5:25-cv-01982-KK-SP

**LOCAL RULE 11-6.2 CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Tesla, Inc., certifies that this brief contains 5,316 words, which complies with the word limit of L.R. 11-6.1.

Dated: December 4, 2025                    _/s/ David C. Marcus_

                                          David C. Marcus

**REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**
*Dawidzik v. Tesla, Inc.*, Case No. 5:25-cv-01982-KK-SP