UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **EDCV 25-01982-KK-SPx** | Date: | December 29, 2025 |
| Title: | ***Peter Dawidzik v. Tesla, Inc.*** | | |

Present: The Honorable KENLY KIYA KATO, UNITED STATES DISTRICT JUDGE

| | |
|---|---|
| Dominique Carr | Not Reported |
| Deputy Clerk | Court Reporter |
| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
| None Present | None Present |

**Proceedings: (In Chambers) Order GRANTING Defendant's Motion to Dismiss [Dkt. 25]**

## I. INTRODUCTION

On October 16, 2025, plaintiff Peter Dawidzik ("Plaintiff") filed a First Amended Complaint ("FAC") against defendant Tesla, Inc. ("Defendant") pursuant to section 638.51 of the California Penal Code. See ECF Docket No. ("Dkt.") 23, FAC. On October 30, 2025, Defendant filed the instant Motion to Dismiss ("Motion"). Dkt. 25-1, Motion ("Mot.").

The Court finds this matter appropriate for resolution without oral argument. See Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15. For the reasons below, Defendant's Motion is **GRANTED**.

## II. BACKGROUND

### A. PROCEDURAL HISTORY

Plaintiff commenced this putative class action on July 31, 2025, and filed the operative FAC on October 16, 2025. Dkt. 1; FAC. Plaintiff's sole cause of action is under section 638.51 of the California Penal Code, which allows for civil liability if any person unlawfully installs a pen register or trap and trace device. See FAC ¶¶ 205-08; Cal. Penal Code § 637.2.

On October 30, 2025, Defendant filed the instant Motion, arguing Plaintiff's FAC should be dismissed for lack of subject matter jurisdiction, personal jurisdiction, and failure to state a claim. See Mot. at 7.

On November 26, 2025, Plaintiff filed an Opposition to the Motion arguing he suffered an injury in fact, the Court has specific personal jurisdiction, and he has sufficiently stated a claim. See Dkt. 27, Opposition ("Opp.") at 6-7. On December 4, 2025, Defendant filed a Reply. Dkt. 28, Reply.

This matter, thus, stands submitted.

## B. FACTUAL BACKGROUND

The FAC alleges the following:

Plaintiff is a California citizen residing in San Bernardino County. FAC ¶ 15. Defendant is a Texas corporation headquartered in Austin, Texas. Id. ¶¶ 20-21.

Defendant, a leading electric automotive company, "enables individuals and businesses to explore, customize, and order" its products through its online website, www.tesla.com. Id. ¶ 21. Generally, when someone enters a URL for a website, their internet browser initiates "an HTTP or HTTPS request" to the website's server. Id. ¶ 39. The server responds by sending the "necessary resources . . . used by the browser to render and display the webpage," such as "client-side scripts." Id. Such scripts may include "tracking pixels," which are "lightweight JavaScript snippet[s] that activate[] when a webpage is loaded" and "initiate communication with third-party [servers]." Id. ¶¶ 4, 39. In other words, when a browser parses a tracking pixel received from the main server, the pixel "cause[s] the browser[] to send identifying information" to a third-party server. Id. ¶ 40.

Defendant's server responds to a browser user's HTTPS requests with a script containing tracking pixels operated by Google, Twitter, and StackAdapt. Id. ¶ 6. Once parsed, the pixels cause the browser to initiate a second set of HTTPS requests to the third-party servers, resulting in the transmission of "routing and behavioral metadata." Id. ¶ 42. The pixels operate "without visible indicators or user awareness," and the third-party servers use the transmitted data "to profile users and facilitate targeted advertising." Id. These profiles include "IP addresses, browser and device type, screen resolution, installed fonts, color depth, time zone, operating system, pages visited, session duration, scroll depth and/or mouse movement, referring URLs, unique identifiers (such as cookies and ad IDs), and geolocation based on IP." Id. ¶ 9. Defendant then "uses the data collected by the [tracking pixels] . . . for targeted marketing and advertising that enable Defendant to monetize its [w]ebsite." Id.

On July 1, 2025, and other occasions, Plaintiff visited Defendant's website while in California using a device connected to a California-based network. Id. ¶ 16. The website had a "California privacy disclosure," and upon loading, "Defendant intentionally embedded the [tracking pixels] on Plaintiff's [browser] for the purpose of sharing Plaintiff's personal signaling, routing[,] and addressing information." Id. ¶ 17.

///

## III.
## LEGAL STANDARD

Federal courts are courts of "limited jurisdiction" which "possess only that power authorized by Constitution and statute." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). A party moving to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(1) may challenge jurisdiction "either on the face of the pleadings or by presenting extrinsic evidence." Warren v. Fox Fam. Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003). When evaluating a facial challenge to the court's subject matter jurisdiction, the court must accept as true all factual allegations in the complaint. Wolfe v. Strankman, 392 F.3d 358, 362 (9th Cir. 2004). The plaintiff bears the burden of showing that jurisdiction exists. Kokkonen, 511 U.S. at 377.

## IV.
## THE COURT LACKS SUBJECT MATTER JURISDICTION BECAUSE PLAINTIFF HAS NOT ALLEGED AN INJURY IN FACT TO ESTABLISH STANDING

### A. APPLICABLE LAW

"Article III of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'" Murthy v. Missouri, 603 U.S. 43, 56 (2024). "A proper case or controversy exists only when at least one plaintiff establishes that they have standing to sue." Id. at 57 (citation modified) (quoting Raines v. Byrd, 521 U.S. 811, 818 (1997)). "[T]he irreducible constitutional minimum of standing" requires an "injury in fact, causation, and redressability." Diamond Alternative Energy, LLC v. Env't Prot. Agency, 606 U.S. 100, 111 (2025) (citation modified) (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992)).

To show an injury in fact, the plaintiff must "demonstrate an injury that is 'concrete,' 'particularized,' and 'actual or imminent, not speculative.'" Id. (quoting Food & Drug Admin. v. All. for Hippocratic Med., 602 U.S. 367, 379 (2024)). An injury is not simply concrete because there is a statutory violation. See TransUnion LLC v. Ramirez, 594 U.S. 413, 427 (2021) ("[A]n injury in law is not an injury in fact."); United States v. Texas, 599 U.S. 670, 676 (2023) ("[T]he alleged injury must be legally and judicially cognizable." (quoting Raines, 521 U.S. at 819)). Rather, the injury must be closely related "to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts." TransUnion LLC, 594 U.S. at 424; accord Popa v. Microsoft Corp., 153 F.4th 784, 789 (9th Cir. 2025) ("[H]istory [is] the touchstone for concreteness."). Some harms, such as physical, monetary, and constitutional harms, "readily qualify" as "concrete" under Article III. TransUnion LLC, 594 U.S. at 425. For other harms, however, the plaintiff must identify "a close historical or common-law analogue" to their alleged injury, albeit not "an exact duplicate." Id. at 424; Popa, 153 F.4th at 791 ("[Courts] look to the specific underlying harm experienced by the plaintiff and compare it, in detail, to a specific common-law tort."). "A close analogue exists when the alleged and traditionally recognized harm[s] are similar in 'kind' rather than 'degree.'" Six v. IQ Data Int'l, Inc., 129 F.4th 630, 634 (9th Cir. 2025) (citation modified), cert. denied, No. 24-1326, 2025 WL 2823837 (U.S. Oct. 6, 2025).

///

///

## B. ANALYSIS

Here, Defendant argues Plaintiff has not alleged an injury in fact for purposes of subject matter jurisdiction. Mot. at 10-16. Plaintiff argues his alleged "statutory privacy violation" under the California Invasion of Privacy Act ("CIPA") is a sufficient injury in fact to satisfy standing and, in the alternative, his alleged injury is closely related to intrusion upon seclusion or unjust enrichment. Opp. at 8-16. The Court addresses each argument in turn.

### 1. General Right to Privacy

First, to the extent Plaintiff argues "statutory standing under CIPA" is enough, Opp. at 8 (citation modified), statutory standing "has nothing to do with whether there is [a] case or controversy under Article III." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 97 (1998); accord Gilbert v. 7-Eleven, Inc., 157 F.4th 1057, 1064 n.4 (9th Cir. 2025) ("[S]tatutory standing . . . should not be confused with constitutional standing under Article III."); Head v. Wilkie, 936 F.3d 1007, 1012 n.4 (9th Cir. 2019) ("There is a difference between statutory standing and constitutional standing.").

Second, to the extent Plaintiff claims his type of injury falls under "the common law and literal understandings of privacy," Opp. at 10 (citation modified), Plaintiff's argument is similar to the "broad theory" of "free-roaming privacy right[s]" the Ninth Circuit rejected in Popa. See Popa, 153 F.4th at 792 (rejecting the same theory "pitched at a high level of generality" because it "does not align with the analysis adopted in TransUnion"). In Popa, the plaintiff argued he satisfied Article III simply because he alleged the defendant violated a statute enacted to "protect[] a substantive privacy right." Id. at 792. The Ninth Circuit found this allegation was insufficient because it "reverts to a pre-TransUnion . . . approach that favors a legislative body's views in the aggregate over a plaintiff's individual circumstances."[1] Id. Rather than propose a "one-size-fits-all approach" under a "general right to privacy," the Circuit explained, the plaintiff must identify "a harm that [they] experienced that is remotely similar" to the harms protected by the four "discrete" torts traditionally recognized in American courts. Id. Thus, just as in Popa, Plaintiff's alleged CIPA violation does not establish an Article III injury in fact.[2] See Rodriguez v. Culligan Int'l Co., No. 25-

[1] In TransUnion, the Supreme Court addressed the injury-in-fact analysis introduced in Spokeo, Inc. v. Robins, 578 U.S. 330, 340 (2016), requiring a plaintiff to show their alleged injury "has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts." TransUnion LLC, 594 U.S. at 417 (quoting Spokeo, Inc., 578 U.S. at 341).

[2] Notably, the cases Plaintiff cites in support of this argument either are pre-Popa, see Frasco v. Flo Health, Inc., 349 F.R.D. 557, 579-80 (N.D. Cal. 2025); Gabrielli v. Motorola Mobility LLC, No. 24-cv-09533-JST, 2025 WL 1939957, at *6-7 (N.D. Cal. July 14, 2025); Mitchener v. Talkspace Network LLC, No. CV 24-07067-JAK-BFMx, 2025 WL 1822801, at *3 (C.D. Cal. June 27, 2025); R.C. v. Sussex Publishers, LLC, No. 24-cv-02609-JSC, 2025 948060, at *3 (N.D. Cal. Mar. 28, 2025); McClung v. AddShopper, Inc., No. 23-cv-01996-VC, 2024 WL 189006, at *2 (N.D. Cal. Jan. 17, 2024); Katz-Lacabe v. Oracle Am., Inc., 668 F. Supp. 3d 928, 939-41 (N.D. Cal. 2023), did not involve Article III standing, see U.S. Dep't of Just. v. Reps. Comm. for Freedom of Press, 489 U.S. 749, 763 (1989); Riganian v. LiveRamp Holdings, Inc., 791 F. Supp. 3d 1075, 1086-87 (N.D. Cal. 2025); Deivaprakash v. Conde Nast Digital, No. 25-cv-04021-RFL, 2025 WL 2779193, at *1 (N.D. Cal. Sep. 30, 2025) (concerning "statutory standing"), are factually distinguishable, see Gabrielli v. Haleon US Inc., No. 25-cv-02555-WHO, 2025 WL 2494368, at *7 (N.D. Cal. Aug. 29, 2025) (involving "healthcare" website that embeds "cookies" that log sensitive "input data"), or did not

cv-00225-AJB-KSC, 2025 WL 3064113, at *3 (S.D. Cal. Nov. 3, 2025) ("Instead of pointing to any specific tort, [the plaintiff] broadly contends that any invasion of a statutorily recognized privacy interest is sufficient to constitute an Article III injury. This is not enough." (citation omitted)).

Third, Plaintiff's reliance on two pre-Popa cases – Eichenberg v. ESPN, Inc., 876 F.3d 979 (9th Cir. 2017), and In re Facebook, Inc. Internet Tracking Litigation ("In re Facebook"), 956 F.3d 589 (9th Cir. 2020) – is misplaced. See Opp. at 11. While Popa did not disturb either case, the Ninth Circuit noted neither Eichenberg nor In re Facebook "finds [] support in TransUnion." Popa, 153 F.4th at 794; see also Price v. Converse, Inc., No. CV 24-08091-FLA-Ex, 2025 WL 3295119, at *3 n.3 (C.D. Cal. Sep. 30, 2025) (refusing to consider In re Facebook because the Ninth Circuit "noted specifically that the court 'might analyze [the statute at issue] differently today, especially after the Supreme Court's decision in TransUnion'" (quoting Popa, 153 F.4th at 794-95)). Further, the Ninth Circuit made clear neither case "greenlight[s] a per se rule" that alleging a statutory privacy violation satisfies Article III standing, and that both cases were instead limited to "the individual circumstances giving rise to [those] plaintiffs' alleged injuries." Popa, 153 F.4th at 794; see also Atkins v. Amplitude, Inc., No. 24-cv-04913-RFL, 2025 WL 2521732, at *1 (N.D. Cal. Sep. 2, 2025) (concluding the plaintiff alleged facts similar to In re Facebook where the data collected concerned "a consumer's religious affiliation, sexual orientation, medical condition, and even whether the consumer is part of an at-risk population").

Plaintiff argues his allegations are "more analogous" to those in In re Facebook, Opp. at 11, but that is simply not so. There, the plaintiffs alleged the defendant collected their data – by downloading over ten cookies – "'no matter how sensitive' or personal" they were, even "after [the plaintiffs] had logged off" Facebook. In re Facebook, 956 F.3d at 598. From this continuous collection of data "over a significant amount of time," the defendant "gained a cradle-to-grave profile without users' consent" that included the user's "employment history and political and religious affiliations." Id. at 599. Here, in contrast, Plaintiff alleges Defendant embedded its HTML scripts with three tracking pixels that caused the user's browser to transmit certain data to third-party servers only when the user visited Defendant's website. FAC ¶¶ 39-40. Such allegations do not rise to the same level of intrusion the Ninth Circuit faced in In re Facebook. See Bradshaw v. Lowe's Cos., No. 25cv0742 DMS (MMP), 2025 WL 3171740, at *6 (S.D. Cal. Nov. 12, 2025) (finding the plaintiff's analogy to In re Facebook "inapt" because the plaintiff did not allege the defendant's website continuously collected data from multiple websites and alleged only the collection of "'IP addresses,' undefined 'unique identifiers,' and 'browsing information'"); Oganyan v. Biolife Plasma Servs. L.P., No. 1:25-cv-00099-KES-SKO, 2025 WL 2979619, at *3 (E.D. Cal. Oct. 22, 2025) ("Here, [the] plaintiffs allege a one-time collection of their IP and email addresses, but they do not allege that the third-party trackers collected any other 'embarrassing, invasive, or otherwise private information.'"); Rodriguez v. Brushfire Recs., No. CV 25-09797-CAS-PDx, 2025 WL 3692144, at *7 (C.D. Cal. Dec. 15, 2025) (distinguishing the plaintiff's case from In re Facebook).

**2. Intrusion Upon Seclusion**

---

read Popa as setting new law, see Camplisson v. Adidas Am., Inc., No. 25-cv-603-GPC-KSC, 2025 WL 3228949, at *6 (S.D. Cal. Nov. 18, 2025) ("Rather than introducing new case law that adds heightened requirements for privacy harms, Popa uses the same common law rules discussed above and evaluates the specific facts of that case."); DellaSala v. Samba TV, Inc., No. 3:25-cv-03470-JSC, 2025 WL 3034069, at *2 (N.D. Cal. Oct. 30, 2025) ("Popa did not set forth a new rule of law.").

Plaintiff also argues his injury is "a modern digital analogue of intrusion upon seclusion." Opp. at 11. Intrusion upon seclusion, a historically recognized privacy tort – see Popa, 153 F.4th at 791; William L. Prosser, Privacy, 48 Calif. L. Rev. 383, 389 (1960) (identifying four historical privacy torts) – occurs where there is (1) "an intentional interference with his interest in solitude or seclusion, either as to his person or as to his private affairs or concerns," (2) "of a kind that would be highly offensive to a reasonable man," Popa, 153 F.4th at 791 (citation modified) (quoting Nayab v. Cap. One Bank (USA), N.A., 942 F.3d 480, 491 (9th Cir. 2019)). The first element requires an "objectively reasonable" expectation of privacy, while the second focuses on "the degree and setting of the intrusion, and the intruder's motives and objectives." Hernandez v. Hillsides, Inc., 47 Cal. 4th 272, 286-87 (2009). The analogous Fourth Amendment context provides guidance "when deciding issues of privacy related to technology." In re Facebook, 956 F.3d at 604 n.7.

At the outset, Plaintiff appears to concede his allegations do not concern "specific, sensitive information," see Opp. at 10, but later argues Defendant's alleged interception of other information, including IP addresses and "referer" URLs, amounts to a "highly offensive intrusion," id. at 11. However, the intercepted information Plaintiff cites does not provide a sufficient basis to establish an expectation of privacy. First, because IP addresses are "voluntarily transmitted to third parties," there is no "expectation of privacy in [such information]." United States v. Rosenow, 50 F.4th 715, 738 (9th Cir. 2022) (citation modified) (quoting United States v. Forrester, 512 F.3d 500, 510 (9th Cir. 2008)). Second, Plaintiff's vague "referer" URLs also do not per se implicate a privacy interest, as Plaintiff has not alleged anything more than "basic identification and address information," i.e., "record information." In re Zynga Priv. Litig., 750 F.3d 1098, 1108-09 (9th Cir. 2014). Third, because Plaintiff's other categories of information are similar to those rejected in Popa, they also do not meet the mark. See Popa, 153 F.4th at 786 (concluding "over 30 different categories" of information were not "otherwise private," including fingerprinting details like "the device the user accessed the website on, the type of browser the user accessed the website on, the operating system of the device used to access the website," and "clicks"). Thus, Plaintiff has not satisfied the first element of an intrusion upon seclusion claim. See Rodriguez, 2025 WL 3692144, at *7 ("[The] [d]efendant's acquisition of plaintiff's IP address and other device identifiers from her visit to [the] defendant's website 'does not cause the kind of harm that can be vindicated in federal court.'" (citation modified)); cf. Pemberton v. Rest. Brands Int'l, Inc., No. 25-cv-03647-JSC, 2025 WL 3268404, at *4 (N.D. Cal. Nov. 24, 2025) (concluding the plaintiff had a "protectable privacy interest" in "[p]rivate [c]ommunications" that included "browsing history," "user input data," and demographic information"); Walsh v. Dollar Tree Stores, Inc., No. 25-cv-01601-SVK, 2025 WL 2939229, at *10 (N.D. Cal. Oct. 16, 2025) (same); Gabrielli v. Haleon US Inc., No. 25-cv-02555-WHO, 2025 WL 2494368, at *7 (N.D. Cal. Aug. 29, 2025) (same, and in the more sensitive healthcare context).

In addition, even if this information were private, Plaintiff has not persuaded the Court that disclosing such information was "highly offensive."[3] See Popa, 153 F.4th at 791 ("Popa identifies no embarrassing [or] invasive . . . information."). At best, Plaintiff avers Defendant's tracking pixels

[3] Plaintiff argues his case is distinct from Popa because an IP address is potentially more sensitive than the disclosure of someone's street name. See Opp. at 12. However, as another court found, "[t]he fact that IP addresses can de-anonymize sensitive personal information does not mean that IP addresses themselves constitute sensitive personal information." Khamooshi v. Politico LLC, 786 F. Supp. 3d 1174, 1180 n.4 (N.D. Cal. 2025).

are "the functional equivalent of secretly monitoring a person's activities within a private digital space." Opp. at 11. Without more particular allegations, however, Plaintiff has not "plausibly allege[d] the infringement of any [] privacy interest." Popa, 153 F.4th at 791; see also id. ("Popa does not explain how the tracking of her interactions with the PSP website caused her to experience any kind of harm that is remotely similar to the 'highly offensive' interferences or disclosures that were actionable at common law."). Thus, Plaintiff also fails to satisfy the "highly offensive" element of intrusion upon seclusion. See Rodriguez, 2025 WL 3692144, at *7 ("[T]he Court cannot identify any harm to her privacy, much less identify a highly offensive intrusion."); cf. Wiley v. Universal Music Grp., Inc., No. 25-cv-03095-PCP, 2025 WL 3654085, at *6 (N.D. Cal. Dec. 17, 2025) (finding the defendant's "misrepresentation to users about whether they would be tracked" was sufficiently "highly offensive" for an "intrusion upon seclusion claim at the pleading[] stage"); Pemberton, 2025 WL 3268404, at *4-5 (similar).

Plaintiff fails to "explain" how the alleged intrusion of his information is "similar to the 'highly offensive' interferences or disclosures that were actionable at common law." Popa, 153 F.4th at 791. Accordingly, Plaintiff's intrusion upon seclusion theory does not establish an injury in fact.

### 3. Unjust Enrichment

Last, Plaintiff argues Defendant has been unjustly enriched. See Mot. at 14-16 ("Plaintiff alleges that Defendant derived an unlawful economic benefit through its installation and use of the [tracking pixels]."). Unjust enrichment "has its roots in the common law," Gardiner Solder Co. v. Supalloy Corp., 232 Cal. App. 3d 1537, 1542 (1991); see also Dobbs, Law of Remedies § 4.1(2), and thus "provid[es] a basis for lawsuits in American courts," TransUnion LLC, 594 U.S. at 425. Plaintiff, however, does not spell out the elements for unjust enrichment, let alone apply them to his alleged facts. See Popa, 153 F.4th at 791 (clarifying that the plaintiff's burden to demonstrate standing includes applying a "specific tort" to their "particularized . . . circumstances"). Regardless, the enrichment of a defendant is only "unjust" when they "conferred a benefit 'through mistake, fraud, coercion, or request.'" Astiana v. Hain Celestial Grp., Inc., 783 F.3d 753, 762 (9th Cir. 2015) (quoting 55 Cal. Jur. 3d Restitution § 2); accord Nibbi Bros., Inc. v. Home Fed. Sav. & Loan Ass'n, 205 Cal. App. 3d 1415, 1422 (1988) ("It must ordinarily appear that the benefits were conferred by mistake, fraud, coercion or request; otherwise, though there is enrichment, it is not unjust." (quoting 1 Witkin, Summary of Cal. Law § 97 (9th ed. 1987))). Plaintiff has not made this showing or otherwise alleged an injury sufficiently analogous to unjust enrichment. See Khamooshi v. Politico LLC, 786 F. Supp. 3d 1174, 1183 (N.D. Cal. 2025) (finding the defendant's disclosure of IP addresses was not "unjust" because such information "is so commonly shared across the internet that it cannot reasonably be considered private" (citing Heeger v. Facebook, Inc., 509 F. Supp. 3d 1182, 1189 (N.D. Cal. 2020))). As for the cases Plaintiff cites in support of his position, none are compelling given they were either decided before Popa or did not apply Popa's element-by-element approach. See Opp. at 15-16.

Accordingly, Plaintiff has failed to establish a cognizable injury in fact under an unjust enrichment theory.[4]

[4] To the extent Plaintiff also argues a "misappropriation or conversion" theory, Opp. at 14, Plaintiff has not sufficiently articulated either theory in his Opposition, see In re Genius Brands Int'l, Inc. Sec. Litig., 763 F. Supp. 3d 1027, 1048 (C.D. Cal. 2025) ("It is not the role of the Court to

* * *

For these reasons, Plaintiff has not alleged standing. Thus, Defendant's motion to dismiss for lack of subject matter jurisdiction is **GRANTED**.[5]

## C. LEAVE TO AMEND

### 1. Applicable Law

A court should "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2); see also Moss v. U.S. Secret Serv., 572 F.3d 962, 972 (9th Cir. 2009). The court may dismiss without leave to amend, however, "if it determines that 'allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency,' or if the plaintiff had several opportunities to amend its complaint and repeatedly failed to cure deficiencies." Telesaurus VPC, LLC v. Power, 623 F.3d 998, 1003 (9th Cir. 2010) (citation modified).

### 2. Analysis

Here, the Court cannot conclude amendment would be futile because it is possible "allegation of other facts consistent with the challenged pleading could . . . cure the deficiency." Id. at 1003. In addition, leave to amend would not prejudice Defendant or produce undue delay. Accordingly, the FAC is **DISMISSED with leave to amend**.

///

///

///

///

///

make parties' arguments for them." (citing Indep. Towers of Wash. v. Washington, 350 F.3d 925, 929 (9th Cir. 2003))).

Also, even had Plaintiff sufficiently shown their injury was similar to unjust enrichment, Plaintiff's standing would be limited to seeking restitution rather than damages. See TransUnion LLC, at 436 ("[A] plaintiff must 'demonstrate standing separately for each form of relief sought.'" (quoting Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc., 528 U.S. 167, 185 (2000)); see also F.T.C. v. Pantron I Corp., 33 F.3d 1088, 1102 (9th Cir. 1994) ("The remedy of restitution seeks to correct unjust enrichment.").

[5] Because the Court lacks subject matter jurisdiction, it need not address Defendant's other bases for dismissal. See Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 587 (1999) (counseling federal courts to "dispose" of subject matter jurisdiction issues first where they "involve no arduous inquiry"); Bell v. Hood, 327 U.S. 678, 682 (1946) (compelling federal courts to "assume jurisdiction" "before" deciding whether a complaint states a claim, not "after").

## V.
## CONCLUSION

For the reasons set forth above, Defendant's Motion is **GRANTED**. **No later than 14 days from this order**, Plaintiff shall file a Second Amended Complaint. If Plaintiff chooses to file an amended complaint, Plaintiff shall lodge as an exhibit a redlined version of the amended pleading indicating all additions and deletions of material. **Plaintiff is expressly warned that failure to timely file either a Second Amended Complaint will result in this action being dismissed for failure to prosecute and comply with Court orders.** See Fed. R. Civ. P. 41(b).

**IT IS SO ORDERED**.